# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA

VERSUS

TERRY STEVEN WILKS, JR. and
LESLIE AMANDA MCHUGH

CRIMINAL ACTION

21-63-SDD-SDJ

## RULING

Before the Court is the *Motion to Dismiss*[1] filed by Defendant Terry Steven Wilks, Jr. ("Wilks") and the *Motion to Dismiss*[2] filed by Defendant Leslie Amanda McHugh ("McHugh") (collectively "Defendants"). Both *Motions* are substantively the same. They seek to dismiss the *Indictment*[3] based on a purported misapplication of the federal Anti-Kickback Statute ("AKS"). An *Opposition*[4] was filed by the Government. For the following reasons, both *Motions* are denied.

## I. BACKGROUND

Defendants are charged with violating AKS, codified at 42 U.S.C. § 1320a-7b. Wilks is charged with three counts of Offer and Payment of Kickbacks and Bribes in Connection with a Federal Health Care Program in violation 42 U.S.C. § 1320a-7b(b)(2)(B).[5] McHugh is charged with three counts of Solicitation and Receipt of Kickbacks and Bribes in Connection with a Federal Health Care Program in violation of 42 U.S.C. § 1320a-7b(b)(1)(B).[6] Both Defendants are charged by indictment with one count of Conspiracy to Defraud the United States and to Pay and Receive Kickbacks in

---

[1] Rec. Doc. 36.
[2] Rec. Doc. 38.
[3] Rec. Doc. 1.
[4] Rec. Doc. 42.
[5] Rec. Doc. 1, ¶¶ 23, 24.
[6] *Id.* ¶¶ 25, 26.

1

violation of 18 U.S.C. § 371.[7]

The following facts are alleged in the *Indictment*. Wilks was the owner and Chief Executive Officer of Acadian Diagnostic Laboratories, LLC ("Acadian").[8] Acadian was a clinical laboratory that provided diagnostic testing services, including urine drug testing, blood testing, and genetic testing.[9] Acadian was enrolled as both a Medicare and TRICARE provider.[10]

McHugh, a Florida resident, served as a licensed nurse in Florida prior to her relationship with Acadian.[11] Around August 2015, she began working as an independent contractor for Acadian and solicited providers in Florida and elsewhere to order laboratory testing services from Acadian.[12] She received payments from Acadian per referral made.[13] In late 2015, the Florida Board of Nursing revoked McHugh's nursing license, and in 2016, Medicare excluded her from participation in all federal health care programs.[14] Nevertheless, McHugh continued to refer doctors' orders and specimens to Acadian for urine drug testing in exchange for payments.[15] In or around April 2016, Wilks directed Acadian to convert McHugh from an independent contractor to a W-2 employee.[16] The Government alleges that despite this purported conversion to a W-2 employee, McHugh did not have a bona fide employment relationship with Acadian, and Acadian continued to pay McHugh per referral made.[17]

---

[7] *Id.* ¶¶ 18-22.
[8] *Id.* ¶ 16.
[9] *Id.* ¶ 13.
[10] *Id.*
[11] *Id.* ¶ 17.
[12] *Id.* ¶ 21(a).
[13] *Id.* ¶ 21(b).
[14] *Id.* ¶¶ 21(c), (e).
[15] *Id.* ¶ 21(f).
[16] *Id.* ¶ 21(d).
[17] *Id.*

Around August 2017, Wilks and McHugh, in an effort to conceal McHugh's ongoing financial relationship with Acadian, changed Acadian's records to indicate that McHugh's employment as a W-2 employee had been terminated.[18] Following this purported termination, Wilks and McHugh caused Acadian to submit approximately $549,580 in claims to Medicare and $17,612 in claims to TRICARE for laboratory testing services that were referred by McHugh in exchange for payments.[19] The payments to McHugh were allegedly made in cash, and funneled through a company created by Wilks.[20]

Defendants now move to dismiss the entirety of the *Indictment*, arguing that it fails to allege facts constituting a violation of AKS.[21]

## II.    LAW AND ANALYSIS

Federal Rule of Criminal Procedure 12(b)(3)(B)(v) allows a defendant to dismiss an indictment that is legally defective for failure to state an offense. A court can rule on such a motion when the alleged infirmity is a legal question requiring no determinations of fact.[22] The court must take the allegations of the indictment as true.[23] To be legally sufficient, an indictment need only (1) enumerate each element of the charged offense, (2) fairly inform the defendant of the charges filed against him, and (3) provide the defendant with a double jeopardy defense against future prosecution.[24]

---

[18] *Id.* ¶ 21(g).
[19] *Id.* ¶ 21(m).
[20] *Id.* ¶ 21(i), (j).
[21] Rec. Doc. 36-1, p. 1.
[22] *See United States v. Fontenot*, 665 F.3d 640, 644 (5th Cir. 2011).
[23] *United States v. Hogue*, 132 F.3d 1087, 1089 (5th Cir. 1998).
[24] *United States v. Gaytan*, 74 F.3d 545, 551 (5th Cir. 1996).

AKS criminalizes certain remunerations in federal health care programs.[25] It contains separate sections for the paying and receiving of kickbacks.[26] McHugh is charged with violating Section 1320a-7b(b)(1), which makes it a crime to:

> knowingly and willfully solicit[] or receive[] any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind—
>
> (A) in return for referring an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program, or
>
> (B) in return for purchasing, leasing, ordering, or arranging for or recommending purchasing, leasing, or ordering any good, facility, service, or item for which payment may be made in whole or in part under a Federal health care program. . . .[27]

Wilks is charged with violating Section 1320a–7b(b)(2), which makes it a crime to:

> knowingly and willfully offer[] or pay[] any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind to any person to induce such person—
>
> (A) to refer an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program, or
>
> (B) to purchase, lease, order, or arrange for or recommend purchasing, leasing, or ordering any good, facility, service, or item for which payment may be made in whole or in part under a federal health care program. . . .[28]

Defendants argue that the *Indictment* should be dismissed because it does not state a violation of either section of AKS. Defendants focus on the phrase "referring an individual" in the first prong of both sections. Defendants contend that "individual" as

---

[25] 42 U.S.C. § 1320a-7b(b).
[26] *Id.*
[27] *Id.* § 1320a-7b(b)(1).
[28] *Id.* § 1320a-7b(b)(2).

4

contemplated by the statute refers only to patients or beneficiaries for whom laboratory work is performed and does not implicate the physicians or medical entities who ordered laboratory work from Acadian. In other words, Defendants contend that they did not violate AKS because they did not steer individual beneficiaries to Acadian for testing—they merely solicited physicians to use Acadian's laboratory services.

This argument fails because Defendants are not charged under subsection A of each section. They are charged under subsections B which, notably, do not contain the word "individual."[29] Subsections B apply to anyone who pays or receives a payment for recommending the purchase of a good or service covered by a federal healthcare program.[30] This includes third party contractors who are compensated for recommending a healthcare service, like laboratory testing, to physicians.[31] That is purportedly the case here: the *Indictment* alleges that Wilks paid McHugh kickbacks in exchange for recommending Acadian's laboratory services to physicians.[32] Wilks paid McHugh even though McHugh did not have a bona fide employment relationship with Acadian and was excluded from participation in all federal health care programs.[33] The allegations in the *Indictment*, if true, state a cognizable violation of AKS as to both Defendants.

Defendants rely on the case *S&G Labs Hawaii, v. Graves*, recently undertaken in the District of Hawaii, which interpreted the meaning of the word "individual" in the

---

[29] *See id.* §§ 1320a–7b(b)(1), (2).
[30] *Id.*
[31] *United States v. Mallory*, 988 F.3d 730, 738 (4th Cir. 2021) ("[AKS] expressly prohibits individuals from receiving remuneration in exchange for "arranging for or recommending purchasing" healthcare services. 42 U.S.C. §§ 1320a-7b(sb)(1)(B), (b)(2)(B). This includes sales representatives who are compensated for recommending a healthcare service, like the HDL or Singulex tests, to physicians.").
[32] Rec. Doc. 1, ¶ 21(b).
[33] *Id.* ¶ 21(d).

5

Eliminating Kickbacks in Recovery Act (EKRA).[34] That case is of no import here. Defendants are not charged under EKRA, nor are they charged under statutory language that involves the term "individual."

In sum, the alleged conduct in the *Indictment* falls squarely within AKS. Dismissal under 12(b)(3)(B)(v) is inappropriate.

### III.    CONCLUSION

For the foregoing reasons, Defendants' *Motion to Dismiss*[35] is hereby Denied.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana, this day, February 13, 2023.

*Shelly D. Dick*

**CHIEF JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[34] *S&G Labs Haw., LLC v. Graves*, No. 19-00310 LEK-WRP, 2021 WL 4847430 (D. Haw. Oct. 18, 2021).
[35] Rec. Doc. 36.